IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny Hernandez,<br><br>               Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>               Respondents. | No. CV 15-01266-PHX-DGC (DMF)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

      Petitioner Danny Hernandez ("Petitioner" or "Hernandez"), is currently incarcerated in the in the Arizona State Prison Complex in Buckeye, Arizona, serving a 34 year imprisonment sentence arising from convictions in the Maricopa County Superior Court, case #CR97-010568, for second degree murder and reckless child abuse. Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (Doc. 1) on July 7, 2015, and an Amended Petition ("Amended Petition) (Doc. 7) on August 11, 2015.  In an August 19, 2015 Order (Doc. 8), the Court required an answer to the Amended Petition.  Respondents filed a Limited Answer (Doc. 17) asserting that the Petition should be dismissed.  Petitioner requested an extension of time to reply (Doc. 18), which the Court granted (Doc. 19).  Petitioner filed a timely Reply (Doc. 20), and without requesting leave or giving reason therefore, Petitioner improperly filed a slightly longer second reply (Doc. 21), which was also timely under

the extension the Court had granted if Petitioner had not already filed a reply (Doc. 19). For the reasons below, undersigned recommends that the Petition be denied as untimely because it was filed on July 7, 2015, over 8 years after AEDPA's 1-year statute of limitations expired.

I.   **BACKGROUND**

   A.   **Proceedings Leading to Conviction and Sentence**

Respondent informs that Petitioner was first charged in juvenile court and there was a transfer from juvenile court to adult court (Doc. 17 at p. 7). Thereafter, on October 8, 1997, the State charged Petitioner with first degree murder, three counts of child abuse, and one count each of forgery and false reporting (Exhibit D, Doc. 17-2 at p. 1-4).[1] The jury found Petitioner guilty of second-degree murder, a class 1 felony and dangerous crime against children, and two counts of reckless child abuse, class 3 felonies (Exhibit E, Doc. 17-2 at p. 5-8).

The trial court sentenced Petitioner to 34 years of imprisonment after finding several aggravating circumstances, including Petitioner's history of abuse of the infant prior to the murder, his continued criminal activity after the murder, and his history of violence and long juvenile record (Exhibit F, Doc. 17-2 at p. 9- 28). The court also noted that Petitioner committed crimes while on release in other cases and that the community was in need of protection from him (*Id.*). The court imposed an aggravated term of 27 years in prison for the murder charge, and aggravated 7-year terms on each count of child abuse, the first count to run concurrently with the murder charge but the second to run consecutively (*Id.*). Petitioner was also convicted by guilty plea to a misconduct involving weapons Class 4 felony which occurred in 2000; the sentence was ordered to run concurrently to one of the child abuse convictions and was a lesser sentence than the child abuse sentence (*Id.*) The misconduct with weapons charge is not at issue in the Amended Petition.

---

[1] The referenced alphabetical exhibits were submitted with Respondents' Limited Answer, Doc. 10. The document and page references herein are to this Court's electronic record.

### B. Underlying Facts

On December 24, 2001, the Arizona Court of Appeals set forth the relevant facts from trial, which this Court presumes to be correct:[2]

> Hernandez lived in an apartment with his girlfriend, her mother ("Grandmother"), and the eight-month old victim, Angelica. Hernandez and his girlfriend were Angelica's parents. Janson "Jay" Simms, a homeless person, lived in the apartment temporarily at the invitation of Grandmother.
>
> The week before the events giving rise to the charges, Angelica appeared fine as she visited with her great-grandparents. She did not typically cry, but had been crying sporadically because of teething pain. On the morning of the crime, Grandmother awakened and played with Angelica, who acted fine. Grandmother then drove Angelica's mother to work and returned home. She played with Angelica again, who continued to seem fine. Grandmother eventually went to work at approximately 9:30 that morning. When she left the apartment, Angelica was in the bedroom with Hernandez. When Grandmother called home between approximately 11:30 and noon to check on Angelica, there was no answer. She called again a few minutes later and spoke to Hernandez, who stated that he had been home all morning but did not hear the telephone ringing. As she spoke to Hernandez, Grandmother heard Angelica crying in the background. She described the crying as a "fussy, hurting type [of] crying," which she attributed to teething, although Angelica had not been crying, nor was she "fussy", before Grandmother went to work.
>
> At approximately 12:30 p.m., law enforcement officers were called to the apartment complex to check on a report of a crying baby. The officers did not locate the child. As the officers walked through the complex, they encountered Simms, who was returning to the second floor apartment. Although asked, Simms could provide no information regarding a crying baby.

---

[2] See 28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a State court shall be presumed to be correct.") *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981) (holding that the federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004).

Simms entered the apartment, where he observed Hernandez take Angelica to the bedroom. A few minutes later, Simms entered the bathroom. While Simms was inside, Hernandez began to bang on the bathroom door, saying that Angelica had stopped breathing. Simms ran to Angelica and, believing she was choking, placed her over his shoulder and began applying percussions to her back. She spit up mucous and blood. Simms placed Angelica on the sofa and told Hernandez to call 911. Hernandez replied, "[N]o, don't call 911, get her to breathe." Simms … recalled meeting the officers downstairs. Simms then ran out of the apartment onto the balcony and called for help. The officers heard him and responded by running upstairs to the apartment, where they found Angelica laying on a sofa and Hernandez standing behind it.

Because Angelica was blue and had no pulse, the officers performed CPR until medical personnel arrived. The baby was thereafter taken to the hospital, where she was diagnosed with hypoxic eschemic encephalopathy. At trial, medical personnel described this condition as an injury to the brain due to lack of oxygen, caused when her heart stopped and she stopped breathing. The State also elicited testimony that eight-month-old children typically do not stop breathing for no reason, nor do their hearts usually stop for no reason. It would take a three to five minute deprivation of oxygen to stop an infant's heart. Medical personnel found no evidence of any infarction or other medical reason that could have caused Angelica's condition.

Angelica also had … a severely fractured right arm that had recently occurred. Medical experts opined that an eight-month-old child could not have caused this type of fracture. Angelica also had petechial hemorrhaging on her face. The presence of these hemorrhages suggested that Angelica had been suffocated. Additionally, the brain injury was consistent with suffocation, as was the fact that blood was present in Angelica's mouth. No other explanation was given for Angelica's brain injury.

Angelica never regained consciousness and died five days after her admission to the hospital. The medical examiner opined that the arm fracture was not a result of accidental trauma, but was an inflicted injury. The cause of death was determined to be anoxic encephalopathy due to smothering. The manner of death was ruled a homicide.

At the time of the crime, Hernandez knew he had an outstanding arrest warrant. Therefore, he concealed his true identity and gave the investigating officers the wrong name throughout their investigation. At

> the request of Angelica's mother, Grandmother misidentified Hernandez as well. At the time of Hernandez's arrest, approximately one year after Angelica's death, he provided several false names to investigating officers and signed a false name to his fingerprint card.
>
> The State theorized that Hernandez broke Angelica's arm, causing her to cry. In turn, another resident heard the prolonged cries and called the police. Hernandez smothered Angelica in order to stop her crying, ostensibly to prevent the officers from coming to the apartment. While much of the evidence supporting Hernandez's conviction is circumstantial, a conviction may be proven by such evidence.

(Exhibit K, Doc. 17-2 at p. 131-135) (citations omitted).

### C. Direct Appeal

On March 15, 2001, Petitioner filed a timely notice of appeal from the convictions and sentences (Exhibit G, Doc. 17-2 at p. 29-31). Petitioner raised four issues in his appeal: 1) Whether the trial court erred in not granting him a judgment of acquittal; 2) Whether the trial court erred in admitting Petitioner's outstanding warrants; 3) Whether the trial court erred in admitting Petitioner's subsequent arrest on unrelated charges; and 4) Whether the trial court erred in admitting out-of-court statements of Janson Simms (Exhibit H, Doc. 17-2 at p. 32-80). The State filed an opposing brief (Exhibit I, Doc. 17-2 at p. 81-113), and Petitioner filed a reply (Exhibit J, Doc. 17-2 at p. 114-128). On December 24, 2001, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences (Exhibit K, Doc. 17-2 at p. 130-142). On February 7, 2002, the court of appeals issued the Order and Mandate (Exhibit L, Doc. 17-2 at p. 144-148). Respondents assert that Petitioner did not file a petition for review with the Arizona Supreme Court (Doc. 17 at p. 8-9), while Petitioner alleges that he did so, but he had no records of such and relief was denied without an opinion issued (Doc. 7 at p. 3).

### D. PCR Proceedings

Petitioner filed three separate state post-conviction relief ("PCR") proceedings, the first of which was timely but was denied. Petitioner sought review of the denial in both the state court of appeals and the state supreme court. No relief was granted. The second petition was arguably properly filed, but was denied. The third petition was untimely and

was denied as such.  The court of appeals denied review of both the second and third petitions.  Petitioner requested review by the state supreme court of the third untimely PCR petition, and review was denied on July 25, 2014.

### 1. First PCR Proceedings

Regarding the first and timely PCR proceeding, on January 25, 2002, Petitioner, though counsel, filed a notice of post-conviction relief ("PCR") (Exhibit M, Doc. 17-2 at p. 149-151).  On July 3, 2002, represented by counsel, Petitioner filed a petition for post-conviction relief (Exhibit N, Doc. 17-2 at p. 152-159).  The petition presented an affidavit of Simms' ex-girlfriend as newly discovered evidence; the affidavit claimed that Simms made statements about harm to the victim (*Id.*).   Subsequently, Petitioner, through counsel, moved to amend the petition to include an ineffective assistance of trial counsel claim (Exhibit O, Doc. 17-2 at p. 177-179).  Through counsel, Petitioner filed an amended supplemental PCR petition for ineffective assistance of trial counsel for failing to call a medical expert regarding Sudden Infant Death Syndrome ("SIDS") (Exhibit P, Doc. 17-2 at p. 180-189).  The state responded to the petition's claims (Exhibit Q, Doc. 17-2 at p. 190-195).  On February 5, 2003, the trial court denied Petitioner's PCR petition, finding his claims unsupported and not colorable (Exhibit R, Doc. 17-2 at 214-215).  On March 5, 2003, Petitioner filed a petition for review with the Arizona Court of Appeals (Exhibits S, T, Doc. 17-2 at p. 216-218, p. 219-227).  On March 24, 2004, the Arizona Court of Appeals denied the petition for review (Exhibit U, Doc. 17-2 at p. 247-248).  Petitioner then filed a petition for review to the Arizona Supreme Court, but that Court denied review on September 23, 2004 (Exhibit S Doc. 17-2 at p. 216-218).

### 2.  Second PCR Proceedings

On January 19, 2005, Petitioner, through counsel, filed his second PCR notice (Exhibit V, Doc. 17-2 at p. 250-263). The trial court dismissed the PCR on February 3, 2005; after noting the first PCR proceeding had been dismissed, the court stated as its reason for the dismissal of the second PCR proceeding:

> Rule 32.4(a), Arizona Rules of Criminal Procedure, provides that any notice not timely filed may only raise claims pursuant to Rule 32.1(d), (e),

(f), (g) or (h). Defendant has not provided the court with any specifics excusing him from the timeliness requirement, as required by Rule 32.2(b).

(Exhibit X, Doc. 17-2 at p. 258-259). Petitioner filed a motion for reconsideration, arguing that he was entitled to the retroactive application of a significant change in the law, pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004) (Exhibit W, Doc. 17-2 at p. 254-257), but the trial court denied the motion, stating.

> Defendant claims that *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), is a significant change of law that applies to his case. As he correctly notes, he contended on appeal that his Confrontation Clause rights were violated by the admission of out-of-court statements by Janson Simms. In affirming, the Court of Appeals noted that Defendant did not contest that the statements were excited utterances. The Court of Appeals has now ruled that Crawford does not apply to the type of excited utterance statements admitted in this case. State v. Aguilar, __ Ariz. __, __P.3d__, 2005 WL 487124 (App. Div.1, March 3, 2005).

(Exhibit Y, Doc. 17-2 at p. 260-261). Petitioner, through counsel, then filed a petition for review with the Arizona Court of Appeals from the denial of his second PCR petition (Exhibit Z, AA, Doc. 17-2 at p. 262-63, Doc. 17-3 at p. 1-29). On April 27, 2006, that court denied Petitioner's petition for review (Exhibit Z, BB, Doc. 17-2 at p. 262-263, Doc. 17-3 at p. 30-33). Petitioner did not file a petition for review with the Arizona Supreme Court (Exhibit Z, Doc. 17-2 at p. 262-263).

### 3. Third PCR Proceedings

More than 5 years later, on October 24, 2011, through counsel, Petitioner filed his third PCR petition, claiming: (1) he had newly discovered evidence—Dr. Jonathan Arden, M.D.'s 2009 report and 2010 affidavit opining about the infant victim's injuries and SIDS (Doc. 17-3 at p. 81-94); and (2) there was a significant change in the law— *Blakely v. Washington*, 542 U.S. 296, 301 (2004)—which was applicable to him (Exhibit CC, Doc. 17-3 at p. 34-103). The State responded to Petitioner's petition (Exhibit DD, Doc. 17-3 at p. 103-125), and Petitioner filed a reply (Exhibit EE, Doc. 17-3 at p. 126-136). On August 3, 2012, the court dismissed the PCR petition, finding the claims precluded in a successive PCR petition and not colorable (Exhibit FF, Doc. 17-4 at p. 1-

8).  On September 10, 2012, Petitioner filed a petition for review with the Arizona Court of Appeals (Exhibit GG, Doc. 17-4 at p. 9-29).  The State filed its response opposing the petition for review (Exhibit HH, Doc. 17-4 at p. 30-50), and Petitioner, through counsel, filed a reply (Exhibit II, Doc. 17-4 at p. 51-61).  On December 3, 2013, the Arizona Court of Appeals denied review (Exhibit JJ, Doc. 17-4 at p. 62-66).  The court of appeals held that summary dismissal was appropriate given Petitioner's "failure to comply with Rule 32.2(b)" regarding timeliness and diligence of his claims (*Id.* at 66).  Again through counsel, Petitioner filed a petition for review to the Arizona Supreme Court (Exhibit KK, Doc. 17-4 at p. 67-83), and that court denied review on July 25, 2014 (Exhibit LL, Doc. 17-4 at p. 83-84).

## II. PETITIONER'S HABEAS CLAIMS

On July 7, 2015, Petitioner filed a Petition for Writ of Habeas Corpus, raising four grounds for relief: (1) Petitioner's sentence for second degree murder was "unconstitutionally enhanced" when the judge incorrectly applied the first degree murder statutes during sentencing; (2) Petitioner received ineffective assistance of trial and appellate counsel when his attorney failed to correct his "unconstitutional sentence"; (3) There was prosecutorial misconduct because the prosecutor used evidence obtained from Detective Armando Saldate, who has a history of perjury, and Dr. Jonathan Arden's medical examination forensic report from 2009 constitutes newly discovered evidence; and (4) Dr. Jonathan Arden's report shows that Petitioner is factually innocent of committing murder (Doc. 1).  After Court Order (Doc. 5), he filed the Amended Petition, raising the same four grounds (Doc. 7).  The Court ordered Respondent to answer the Petition (Doc. 8).

## III. LEGAL ANALYSIS

### A. AEDPA's Statute of Limitations and Statutory Tolling

A threshold issue for the Court is whether the habeas petition is time-barred by the statute of limitations.  The time-bar issue must be resolved before considering other procedural issues or the merits of any habeas claim.  *See White v. Klitzkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).  The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") governs Petitioner's habeas petition because he filed it after April 24, 1996, the effective date of the AEDPA. *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001) (citing *Smith v. Robbins*, 528 U.S. 259, 267 n.3 (2000)).

### 1. One Year Limitations Period

Under the AEDPA, a state prisoner seeking federal habeas relief from a state court conviction is required to file the petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). As a general matter, AEDPA's 1-year statute of limitations begins to run on the date on which the judgment against a petitioner became final either by the conclusion of direct review or the expiration of the time available to seek such review. 28 U.S.C. § 2244(d)(1)(A); *Jimenez v. Quarterman*, 555 U.S. 113, 118–20 (2009); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073–74 (9th Cir. 2007) (noting that direct appeal is final upon expiration of time for seeking further appellate review).

After trial and sentencing, Petitioner appealed his convictions and sentences to the Arizona Court of Appeals, and the court of appeals affirmed Petitioner's convictions and sentences on December 24, 2001. Petitioner had 35 days, until January 28, 2002, to file a petition for review in the Arizona Supreme Court, but there is no record that he did so. *See* Ariz. R. Crim. P. 31.19(a); *State v. Rabun*, 162 Ariz. 262, 263, 782 P.2d 737, 739 (1989) (holding that a 5-day extension is warranted when a notice is mailed to the party who is required to act). Accordingly, Petitioner's convictions became "final" on January 28, 2002, the day that Petitioner's time expired for filing a petition for review. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 654 (2012). Therefore, in the present case, AEDPA's expired 1 year later, unless a timely PCR proceeding was filed, which would have tolled the limitations period. *See* section III(A)(2), *infra*.

### 2. Statutory Tolling

Under the AEDPA, the one-year limitations period is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also*

*Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002).  A state petition that is not filed within the state's required time limit, however, is not "properly filed," and is thus not entitled to statutory tolling.  *Allen v. Siebert*, 552 U.S. 3, 6–7 (2007) (finding that inmate's untimely state post-conviction petition was not "properly filed" under AEDPA tolling provision); *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).").

Petitioner filed a timely PCR petition on January 25, 2002, and he is entitled to statutory tolling for the pendency of that PCR petition.  *See* 28 U.S.C. §2244(d)(2).  The Arizona Supreme Court denied Petitioner's petition for review on September 23, 2004, thus concluding the PCR proceedings. Therefore, Petitioner's time began running on September 23, 2004, and expired 1 year later, on September 23, 2005.

Respondent argues that Petitioner's second PCR petition did not toll the limitations period from January 19, 2005, until April 27, 2006, because it was not properly filed pursuant to Rule 32.1 and 32.4(a), of the Arizona Rules of Criminal Procedure (Doc. 17 at 13).  Indeed, the trial court dismissed the PCR as untimely.  *See* 28 U.S.C. §2244(d)(2) ("The time during which a properly filed application for State postconviction or other collateral review [is] pending shall not be counted toward any period of limitation under this subsection.") (emphasis added); *Pace*, 544 U.S. at 414, 417 (time limits, "no matter their form," are "filing conditions," with which noncompliance forecloses statutory tolling); *Siebert*, 552 U.S. at 4–5 ("Because Siebert's petition for state post-conviction relief was rejected as untimely by the Alabama courts, it was not 'properly filed' under § 2244(d)(2)).

The dismissal for untimeliness of the second PCR petition was not the end of the second PCR trial court proceedings, though.  The trial court ruled on Petitioner's motion for reconsideration addressing the merits of the *Crawford* argument raised by Petitioner. The question is whether or not that changed whether tolling was warranted during the second PCR proceedings.  Respondent's may have the better end of the argument, but close examination is not warranted.  Even granting Petitioner statutory tolling for his second, improperly-filed PCR proceeding, his habeas petition would still be untimely.

The second PCR proceedings concluded on April 27, 2006. Petitioner did not file this habeas proceeding until July 7, 2015, more than 9 years later. Even with tolling due to and during the second PCR proceedings, the Petition was filed more than 8 years late.

Petitioner's third and untimely PCR petition filed on October 24, 2011, did not statutorily toll the running of the limitations period because an untimely petition is not a "properly-filed" application, and does not toll the running of the statute. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)") (internal quotation omitted); *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005). Furthermore, because the limitations period had already expired years before, Petitioner could not restart the clock by filing a subsequent PCR application. "A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled." *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *see also Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Therefore, Petitioner was required to file his federal habeas petition at least eight years before July, 2015, absent any equitable tolling.[3] *See* section III(A)(3), *infra*.

### 3. Equitable Tolling

The AEDPA limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *See Holland v. Florida*, 560 U.S. 631, 645–46 (2010). However, for equitable tolling to apply, a petitioner must show "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way" to prevent him from timely filing a federal habeas petition. *Id*. at 649 (quoting *Pace v. DiGuglielma*, 544 U.S. 408, 418 (2005)). "The diligence required for equitable

---

[3] Further, a subsequent PCR proceeding that is deemed untimely does not toll the time between the previous and subsequent PCR proceedings. *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007).

- 11 -

tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citations and quotations omitted).

Whether to apply the doctrine of equitable tolling "'is highly fact-dependent,' and [the petitioner] 'bears the burden of showing that equitable tolling is appropriate.'" *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005) (internal citations omitted); *see also Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that equitable tolling is "unavailable in most cases," and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations and internal emphasis omitted). Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *See Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1060 (9th Cir. 2007).

A petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *See, e.g., Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *see also Ballesteros v. Schriro*, CIV-06-675-PHX-EHC (MEA), 2007 WL 666927, at *5 (D. Ariz. Feb. 26, 2007) (a petitioner's *pro se* status, ignorance of the law, lack of representation during the applicable filing period, and temporary incapacity do not constitute extraordinary circumstances). Further, a prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).

In *Ramirez v. Yates*, the petitioner argued that he had limited access to the law library and copy machine during the period in which he remained in administrative segregation. *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009). In denying equitable tolling for that period of time, the Ninth Circuit has stated that "[o]rdinary prison limitations on [petitioner's] access to the law library and copier (quite unlike the denial altogether of access to his personal legal papers) were neither 'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner. Given even the most

common day-to-day security restrictions in prison, concluding otherwise would permit the exception to swallow the rule—according to [petitioner's] theory, AEDPA's limitations period would be tolled for the duration of any and every prisoner's stay in administrative segregation, and likely under a far broader range of circumstances as well." *Id*.; *see also Gutierrez-Valencia v. Ryan*, No. CV-12-01318-PHX-JAT, 2014 WL 1762978, at *5 (D. Ariz. May 5, 2014) (where petitioner did not allege a complete lack of access to his legal file, only his being housed in lock down status in a maximum security facility, court held that "Petitioner has not provided this Court with any specific details regarding what legal materials he was seeking and how they would be of assistance in his habeas filing . . . [and] Petitioner does not dispute that his lock down status is an ordinary prison limitation."). *Cf. Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006) (finding that lack of access to Spanish language legal materials or assistance could entitle habeas petitioner to equitable tolling).

Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner asserts his Petition was untimely because "he was unaware of several factors until filing Rule 32 PCR's" (Doc. 7 at p. 11). As discussed above, this assertion is not a basis for equitable tolling. Petitioner also indicates that the 2013 Ninth Circuit case of *Milke v. Ryan*, 711 F. 3d 998 (9th Cir. 2013) provides basis for equitable tolling because of the detective in that case, Armando Saldate, Jr., but Petitioner provides no explanation as to the delay between March, 2013, and the filing of this case in July, 2015. Even if this purported basis wasn't stale, the transcript of Petitioner's jury trial reveals that Saldate's work on Petitioner's case was not at the apartment complex or even questioning Petitioner on the scene; that was the work of three other officers (Doc. 17-1 at p. 20-28, 30-31, 59-100, 143-171). Saldate's very limited work relating to Petitioner's case arose from a traffic stop the year after the baby's death. After getting two different

names from Petitioner that did not appear to be valid, Saldate arrested Petitioner for failing to provide proof of his identity. Saldate then quickly uncovered Petitioner's true identity by fingerprinting him. Saldate promptly learned there was a warrant for Petitioner's arrest for murder and child abuse. Saldate arrested Petitioner on the warrant, and thereafter Petitioner was detained (Doc. 17-1 at p. 172-178). The Court has reviewed the *Milke* opinion as well as the transcript of Saldate's testimony in Petitioner's case and no equitable tolling is warranted.

Petitioner has failed to meet his burden of showing extraordinary circumstances or reasonable diligence that would justify equitable tolling. Additionally, the record does not reveal any extraordinary circumstances that prevented Petitioner from filing a timely federal habeas corpus petition. Because Petitioner has not presented circumstances and met his burden that would justify equitably tolling the AEDPA statute of limitations and there is no extraordinary circumstance reflected in the record which prevented the timely filing of a federal habeas corpus petition, the Petition is untimely and the Court will not consider Respondents' alternative grounds for denying habeas corpus relief. *See White v. Klitzkie*, 281 F.3d 920, 921–22 (9th Cir. 2002) (whether a petition is barred by the statute of limitations is a threshold issue that must be resolved before considering other procedural issues or the merits of individual claims).

    4.    Actual Innocence

In the Ninth Circuit, a valid claim of actual innocence can act as a gateway to excuse an untimely filed habeas petition. *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011) (applying *Schlup v. Delo*, 513 U.S. 298 (1995); *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1928 (2013). The "actual innocence gateway" is also referred to as the "*Schlup* gateway" or the "miscarriage of justice exception."

To pass through the actual innocence/*Schlup* gateway, a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. U.S.*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882–83 (9th Cir. 2003). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. *See also Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir.2011); *McQuiggin*, 133 S.Ct. at 1927 (explaining the significance of an "[u]nexplained delay in presenting new evidence"). A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 133 S.Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327)). Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir.2000) (citing *Calderon v. Thomas*, 523 U.S. 538, 559 (1998).

Petitioner seems to argue actual innocence as a basis to excuse the late filing of his habeas petition (Doc. 7 at p. 9). There are several problems with this. First, the proffered new evidence by Petitioner is stale. He urges the Court to consider the same doctor report that was authored in 2009 and submitted to the Arizona courts in 2011 (Doc. 7-2 at 35-48; Doc. 17-3 at p. 81-94). Petitioner has not acted diligently to bring his claims before this Court. Because Petitioner's bases for purported actual innocence are so stale, it is not warranted to even consider the actual innocence/*Schlup* gateway in this case, let alone apply it to allow the untimely Petition.

Even if this Court were to consider this evidence, Petitioner has not met the burden required by *Schlup* and its progeny. As the Arizona Court of Appeals wrote in 2012 about the same doctor's report and opinions:

> Even if this claim was not precluded, the court finds the defendant failed to establish this evidence, if presented at trial, would have changed the outcome. At trial, the State presented evidence the baby appeared fine when she visited with her great-grandparents the week before October 21, 1996. The grandmother, with whom the defendant and baby resided, testified that the baby acted fine on the morning of October 21, 1996. When the grandmother left for work at 9:30 a.m. that day, the baby was in the apartment with the defendant. At approximately noon that day, the grandmother called the defendant and heard the baby crying in the background. At 12:30 p.m. that day, police were called to the apartment complex, they saw Simms. He told the officers he had no information about a crying baby. Simms later saw the defendant take the baby to the bedroom. Later, the defendant told him the baby had stopped breathing.

> Simms ran to the baby, thinking she was choking, placed her over his shoulder and applied pressure to her back. She spit up mucous and blood. Simms told the defendant to call 911. When the defendant did not do so, Simms went to get the officers he had seen earlier to help with the baby….
>
> The opinions of Dr. Arden do not address all the facts presented at trial. In addition, Dr. Arden's report acknowledges that smothering is one mechanism that could cause anoxic encephalopathy, the cause of the baby's death.

(Doc. 17-4 at p. 5-6). Petitioner is not entitled to an actual innocence gateway for relief from the untimeliness of his Petition.

## IV.   CONCLUSION

Petitioner filed the pending Petition more than 8 years after the expiration of the AEDPA statute of limitations, and neither equitable tolling or actual innocence render the petition timely. Accordingly, the Petition is untimely under 28 U.S.C. § 2244(d)(1).

Because the Petition is untimely, the Court does not consider Respondents' alternative grounds for denying habeas corpus relief. The Court will therefore recommend that the petition be denied and dismissed.

Assuming the recommendations herein are followed in the District Judge's judgment, the District Judge's decision will be on procedural grounds. Under the reasoning set forth herein, reasonable jurists would not find it debatable whether the District Court was correct in its procedural ruling. Accordingly, to the extent the Court adopts this Report and Recommendation as to the Petition, a certificate of appealability should be denied.

**IT IS THEREFORE RECOMMENDED that** the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 7) be **DENIED** and **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED that** a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

   This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  The parties shall have fourteen days within which to file responses to any objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

   Dated this 30th day of November, 2016.

                    Honorable Deborah M. Fine
                    United States Magistrate Judge